**FILED**

**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Augusta, Georgia**
**By jpayton at 12:46 pm, Mar 30, 2016**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number <u>13-10860</u> |
| WILLIAM JEFFREY BROOKS | ) | |
| | ) | |
| Debtor | ) | |
| —————————————————— | ) | |
| | ) | |
| RES-GA BAY ST. LOUIS, LLC. AND | ) | |
| RREF II WBC ACQUISITIONS, LLC | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary Proceeding |
| | ) | Number <u>14-01016</u> |
| WILLIAM JEFFREY BROOKS | ) | |
| | ) | |
| Defendant | ) | |
| —————————————————— | ) | |

## <u>OPINION AND ORDER</u>

Before the Court are cross motions for summary judgment. Plaintiffs RES-GA BAY ST. LOUIS, LLC ("RES-GA") and RREF II WBC ACQUISITIONS, LLC ("RREF") seek summary judgment denying William Jeffrey Brooks ("Debtor") a discharge pursuant to 11 U.S.C. §727(a)(2), (3), (4) and (5). Debtor seeks summary judgment dismissing the complaint contending Plaintiffs' lack of standing to pursue this §727(a) action. This is a core matter under 28 U.S.C.

1

§157(b)(2)(J) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons the cross summary judgment motions are DENIED.

<u>**UNDISPUTED FACTS**</u>

The claims of RREF and RES-GA arise out Debtor's purported personal guaranty of construction loans. As to RREF, Debtor and Christopher G. Mohr ("Mohr") each own 50% of Brooks Mohr Builders, LLC ("BMB"), which obtained fourteen (14) loans from Branch Banking and Trust Company ("BB&T") for the construction of single family houses. Brooks' Dep. Tr. 9:17-59:8, June 30, 2015. Debtor and Mohr signed personal guaranties in connection with these fourteen (14) loans. <u>See</u> Claim Nos. 32-45, as amended. Debtor, through his company, WJ Brooks, Inc., also obtained two additional loans from BB&T which he personally guaranteed. <u>See</u> Brooks' Dep. Tr. 9:17-59:10, June 30, 2015; Claim Nos. 46-3 and 47-3, as amended). RREF is the successor-in-interest to BB&T on these sixteen (16) loans.

After payment default, BB&T sued the borrower and guarantors in state court on the fourteen (14) loans. Pursuant to a pre-petition settlement agreement reached between BB&T, BMB, Debtor and Mohr, the original fourteen (14) notes and related loan documents were modified to, inter alia, reamortize the debt and extend the loan term. Brooks' Dep. 129:1-12. As successor in

2

interest to BB&T, RREF filed proofs of claims for its debt in Debtor's bankruptcy case. See Claim Nos. 32-47.

As to RES-GA, Debtor held an ownership interest in another construction company, BCM Development, LLC ("BCM"), which held an ownership interest in Pendergrass Development, LLC ("Pendergrass"). RES-GA filed an $11.7 million dollar[1] proof of claim arising from a guaranty Debtor purportedly signed for a loan to Pendergrass from Alpha Bank & Trust ("Alpha"). RES-GA is the successor-in-interest to Alpha.

Plaintiffs, RREF and RES-GA, filed this §727 adversary proceeding alleging Debtor is not entitled to a discharge under the following facts:

1.  Debtor filed a chapter 11 bankruptcy petition on May 14, 2013;

2.  With Debtor's consent the case was converted to a chapter 7 in May 2014. Dckt. No. 241, Chapter 7 Case No. 13-10860;

3.  In April 2013, Debtor transferred $133,000.00 ("B&A Transfer") to his then girlfriend, Rhonda Duggan ("Duggan"), purportedly to establish a new business, B&A Flowers, LLC. ("B&A Flowers"). Brooks' Rule 2004 Tr. 96:15-96:17; 110:12-110:14, November 13, 2013; Brooks' Dep. Tr. 86:15-86:17, June 30, 2015, Ex. 14. In his original bankruptcy schedules, Debtor made no disclosure of this

---

[1] Rounded.

3

transfer and he amended his schedules only after Plaintiffs uncovered the transfer during discovery. Dckt. Nos. 1 and 26, Chapter 7 Case No. 13-10860;

4. The B&A Transfer substantially depleted Debtor's cash assets, taking his bank account balance from almost $150,000.00 before the transfer, to roughly $3,000.00 in the weeks preceding the petition date. Brooks' Rule 2004 Tr. 110:8-110:11, November 13, 2013; Ex. 14;

5. Debtor also transferred an additional $5,000.00 to B&A Flowers, a business purportedly owned by Duggan, four months before the petition date. Brooks' Rule 2004 Tr. 95:17-96:14, November 13, 2013;

6. Debtor is the purported sole manager of B&A Flowers and runs the day to day operations, including ordering the inventory and filing papers with B&A Flowers' accountant. Duggan Rule 2004 Tr. 13:3-18:22, 27:7-18 and 28:1-9; Brooks' Rule 2004 Tr. 32:4-32:12, November 13, 2013; Brooks' Dep. Tr. 72:13-72:23, June 30, 2015. Duggan and Debtor testified Debtor maintains control over how much he gets paid by B&A Flowers and how many of his personal bills are paid by B&A Flowers. Id.;

7. Debtor's Amended Disclosure Statement filed in this case provides that Duggan "has agreed to transfer 100% of the stock in B&A Flowers

4

to Debtor." Dckt. No. 161, Chapter 7 Case No. 13-10860. Subsequently, both Duggan and Debtor testified that there was no plan to transfer ownership of B&A Flowers to Debtor. Duggan 2004 Tr. 30:3-12, June 29, 2015; Brooks Dep. Tr. 84-85, June 30, 2015;

8. Duggan has not invested any money into B&A Flowers. Duggan 2004 Tr. 40:8-14, June 29, 2015. Duggan has not received a salary or distribution from B&A Flowers, but B&A Flowers has paid for the maintenance of her car and its upkeep, such as tires, brakes, oil changes and insurance. Duggan 2004 18:23-25-19:1-3;

9. Debtor also admits he lent $5,000.00 to Flower Garden, a business owned by Duggan's mother, two months before he filed his bankruptcy petition. Brooks' Rule 2004 Tr. 102:19-102:24, November 13, 2013; Ex. 13. The loan was not repaid by Flower Garden until June 2013, post-petition. Brooks' Rule 2004 Tr.103:7-103:8, November 13, 2013. In his bankruptcy schedules, Debtor failed to disclose this loan. Dckt. Nos. 1 and 471, Chapter 7 Case No. 13-1086;

10. Debtor also made transfers to insiders. Specifically, Debtor admits transferring $13,870.00 to his business partner, Mohr, paid in installments of $4,870.00 and $9,000.00 in January 2013. Brooks' Rule 2004 Tr. 92:10-94:7, November 13, 2013, Ex. 12;

11. As the founder and previous officer of the Georgia Deer Association, Inc., Debtor purportedly loaned himself $27,500.00 from

the organization without any written agreement. Brooks' Rule 2004
Tr. 94:8-95:16, November 13, 2013; Brooks Dep. Tr. 122:6-123:6, June
30, 2015. Debtor purportedly repaid Georgia Deer Association, Inc.
this same amount in January 2013, four months before the petition
date. Brooks' Rule 2004 Tr. 94:8-95:16, November 13, 2013, Ex. 12.
Debtor failed to disclose his lifetime membership in the Georgia
Deer Association, Inc. on his schedules. Brooks' Rule 2004 Tr.
68:18-68:21, November 13, 2013, Ex. 12;

12. Debtor failed to disclose Semper Fi Whitetails, LLC, a company
owned by Debtor to facilitate deer breeding. Brooks' Rule 2004 Tr.
240:5-243:4, November 13, 2013. Three months prior to filing his
petition, Debtor transferred $30,000.00 to Extreme Whitetails, LLC
to pay for the artificial insemination of a deer owned by Debtor.
Brooks' Rule 2004 Tr. 103:18-104:5, November 13, 2013, Ex. 13;

13. Plaintiffs contend Debtor is unable to explain the source and
full disposition of two large deposits; one $160,575.00 made in
December 2012 and the other made in January 2013 in the amount of
$259,362.00. Brooks' Rule 2004 Tr. 85:4-88:24, November 13, 2013,
Exs. 11-12. Debtor states the source of some of these funds was a
settlement with Wells Fargo for purportedly churning his investments
and from an account at Debtor maintained at Habersham Bank; however,
Debtor has not explained the full disposition of this $419,937.00.

6

Brooks' Rule 2004 Tr. 85:4-88:24, November 13, 2013; Brooks' Dep. Tr. 125:20-126:9, June 30, 2015;

14. In his amended bankruptcy schedules, Debtor values his interests in WJ Brooks, Inc. at zero ($0.00) dollars. Dckt. No. 471, Chapter 7 Case No. 13-10860. Despite this claim, Debtor admits that as of the petition date and thereafter WJ Brooks continued to own and operate two rental houses, generating revenue Debtor failed to disclose in his bankruptcy schedules. Brooks' Rule 2004 Tr. 16:19-18:22 and 23:13-23:18, November 13, 2013;

15. Debtor's Amended Schedule B values BMB at zero ($0.00) dollars. Dckt. No. 471, Chapter 7 Case No. 13-10860. Debtor failed to disclose in his original or amended schedules that as of the petition date, BMB owned fourteen (14) rental houses in Thompson, Georgia which were being rented as of November 13, 2013, post-petition. Brooks' Rule 2004 Tr. 10:7-10:16, November 13, 2013.

Debtor testified that as the manager of BMB, he makes the determination of when, the amount, and purpose of disbursements made by BMB to Debtor and his partner, Mohr. Debtor states he keeps no written records of these disbursements. Brooks' 2004 Tr. 72, June 30, 2015. He further testified that there were three bases upon which disbursements could be made to Mohr or Debtor: 1) loan repayment; 2) salary; and 3) cash payments for personal labor

7

incurred in maintaining the fourteen (14) BMB properties. Brooks'
Dep. Tr. 69:13-70, June 30, 2015;

16. Debtor testified that both he and Mohr made contributions of
$50,000.00 into BMB as a pre-condition to securing the initial
acquisition and construction loans from BB&T. Brooks' Dep. Tr. 70,
June 30, 2015. These contributions are the basis of the purported
loans owed by BMB to Debtor and Mohr. Brooks' Dep. Tr. 71:22 -
72:15; 124:3-25, June 30, 2015. Debtor's bankruptcy schedules fail
to disclose any loan to BMB. However, Debtor testified that the
$50,000.00 contribution to BMB is shown on his 2013 tax return as a
loan. Brooks' Dep. Tr. 71-72, June 30, 2015. Plaintiffs contend no
loan payable is reflected on Debtor's 2013 tax return. Dckt. No.
71, Ex. G;

17. Debtor also testified that he reported all of his income from
BMB in the Monthly Operating Reports ("MORs") filed in his
bankruptcy case by designating any income from BMB as "BM." Brooks'
Dep. Tr. 73:20-74:8, June 30, 2015. However, none of the MORs filed
appear to designate any income from "BM." Dckt. Nos. 31, 45, 46,
73, 97, 112, 137 and 146, Chapter 7 Case No. 13-10860. In the filed
MORs, under Cash Receipts, Debtor lists amounts for "(Salary) or
Cash from Business." Id. However, there is no indication of the
source. No entry contains the annotation "BM." Debtor also was

8

operating B&A Flowers at the same time as these purported disbursements were made from BMB;

18.  BMB has no written leases with its tenants.  Brooks' Dep. Tr. 81:15-24, June 30, 2015.  The only business record produced by Debtor for BMB is a single statement from the State of Georgia reflecting disbursements by the State on behalf of Section 8 tenants.  Brooks 2004 Tr. 81:7-16, June 30, 2015;

19.  Similarly, there are no written loan agreements related to Debtor's transfers to B&A Flowers.  Duggan 2004 Tr. 25:4- 26:2;

20.  At this point, Debtor states he conducts all of his personal financial transactions in cash.  Brooks' Dep. Tr. 121:14- 22, June 30, 2015; and

21.  Debtor testified that he maintained a safe in his home where he held cash.  Brooks' 2004 Tr. 238, November 13, 2013.  Although his bankruptcy schedules show no cash holdings as of the petition date, Debtor admits there may have been $400.00 to $500.00 in cash in the safe at that time.  Id.

In his pro se response to Plaintiffs' summary judgment motion, Debtor contends the $133,000.00 transfer to B&A Flowers one month before filing for bankruptcy was a loan to purchase inventory to get the business started.  Debtor contends this is disclosed in his Disclosure Statement Dckt. No. 161, Chapter 7 Case No. 13-10860.

9

Duggan testified that B&A Flowers is her company, but Debtor manages the business day to day. Debtor's personal bills are paid by B&A Flowers as repayment for the loan and Duggan and Debtor both believe the loan has now been repaid. Duggan Dep. 27:7-25. Duggan testified that Debtor told her he was having some financial problems and she knew "[Debtor] needed a job, and I thought, well, I've got the knowledge and the ability of opening up a business, and it would be a perfect opportunity for me . . . ." Duggan Tr. 48:2-11. Duggan admits there is no written agreement regarding the purported loan repayment and no written operating agreement for B&A Flowers, but she testified Debtor was repaid the money he loaned the company. Id. at 18:2-4, 25:4-8, and 31:18-23. Debtor contends the transfer to B&A Flowers provides him with a job to pay his bills. Duggan states Debtor informs her what he needs in order to pay his personal bills each month. Id. at 17:3-18:5-22. Debtor further contends that the $5,000.00 to Duggan's mother's business, Flower Garden, was a loan from B&A Flowers. Dckt. No. 81, p. 7. Debtor states the loan to Flower Garden was made at Duggan's request. Id.

He also contends the $27,500.00 he paid to Georgia Deer Association was a loan repayment for the cash he needed to pay legal fees. Debtor further states that the discrepancies and omissions in his bankruptcy schedules are due to his reliance on his initial

10

bankruptcy counsel and not the result of an intent to defraud his creditors.[2]

## CONCLUSIONS of LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);[3] see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> [A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (internal quotations omitted). Once the moving party has properly supported its motion with such evidence, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth

---

[2]   Debtor's initial bankruptcy counsel withdrew in 2014. Debtor's subsequent bankruptcy counsel has filed a motion to withdraw. Dckt. No. 591, Chapter 7 Case No. 13-10860.

[3]   Pursuant to Federal Rule of Bankruptcy Procedure 7056, Rule 56 of the Federal Rules of Civil Procedure is applicable in bankruptcy adversary proceedings.

✎AO 72A
(Rev. 8/82)

specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 288-89 (1968); Fed. R. Civ. P. 56(e). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985)(citations omitted). However, if reasonable minds could differ on inferences arising from undisputed facts, the court should deny summary judgment. Id. at 250.

It is well accepted that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). "The nonmoving party, even if a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by

12

evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial." Munera v. Metro W. Detention Cntr., 351 F. Supp. 2d 1353, 1357 (S.D. Fla. 2004) (citing Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987)).

**Debtor's Motions for Summary Judgment.**

Debtor's pro se Motions for Summary Judgment contend the Plaintiffs lack standing to pursue the §727 action. Debtor contends both RREF and RES-GA are foreign limited liability corporations, unauthorized to transact business in Georgia and therefore cannot pursue this complaint. Debtor further alleges RREF is not a creditor because the pre-petition Settlement Agreement purportedly released Debtor from this debt. This Court has addressed these arguments regarding RREF in a prior order, finding RREF has standing and Debtor did not prove he was released from his personal guaranty. See Dckt. No. 588, Chapter 7 Case No. 13-10860. Furthermore, RREF has two additional proofs of claim that were not included in the Settlement Agreement and thus has standing to pursue this §727 action. See 11 U.S.C. §727(c). For these reasons, and the reasons set forth in the Court's previous order, Debtor's motion for summary judgment as to RREF's standing is denied.

Likewise, the Court previously addressed Debtor's

·13

arguments regarding RES-GA's standing and found Debtor has not established that RES-GA is a foreign limited liability company unauthorized to transact business in Georgia. Dckt. No. 602, Chapter 7 Case No. 13-10860. RES-GA has provided evidence that it is registered with the Georgia Secretary of State to do business in Georgia and Debtor has not established that he did not sign the guaranty. For these reasons, and the reasons set forth in the Court's previous order, Debtor's motion for summary judgment as to RES-GA's standing is denied.

**Plaintiffs' Motion for Summary Judgment.**

Plaintiffs object to Debtor's discharge under 11 U.S.C. §727(a)(2), (3), (4) and (5) which provides:

> (a) The court shall grant the debtor a discharge, unless-
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

14

books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case-

    (A) made a false oath or account;
    (B) presented or used a false claim;
    (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. §727(a)(2)-(5). Discharges are available only to the "honest but unfortunate debtor." _In re Mitchell_, 633 F.3d 1319, 1326 (11th Cir. 2011). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. _In re St. Laurent II_, 991 F.2d 672, 680 (11th Cir. 1993); _In re Walker_, 48 F.3d 1161, 1164-65 (11th Cir. 1995). Plaintiffs have the burden of establishing by the preponderance of the evidence that Debtor is not entitled to receive a discharge. _In re Bullock_, 670

15

F.3d 1160 (11th Cir. 2012) (<u>citing</u> <u>Grogan v. Garner</u>, 498 U.S. 279 (1991); <u>In re Chalik</u>, 748 F.2d 616 (11th Cir. 1984)(burden on objecting party); <u>In re Metz</u>, 150 B.R. 821 (Bankr. M.D. Fla. 1993)(standard of proof is preponderance of the evidence).

**11 U.S.C. §727(a)(2)**.

To object to discharge under §727(a)(2), a plaintiff must prove by a preponderance of the evidence: "(i) that the act complained of was executed within one year before the date of the filing of the petition; (ii) that the act was executed with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (iii) that the act was that of the debtor or a duly authorized agent of the debtor; and (iv) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be executed." <u>In re Matus</u>, 303 B.R. 660, 673 (Bankr. N.D. Ga. 2004). Because a debtor will not likely admit to fraudulent intent, fraud may be inferred. <u>In re Osterman</u>, 296 F. App'x 900, 902 (11th Cir. 2008). Courts have utilized the following "badges of fraud" as strong indicators of a fraudulent intent: (1) lack of adequate consideration for the property transferred; (2) a family or close relationship between the parties; (3) retention of possession for use and benefit; (4) financial

16

condition of the transferor before and after the transfer; (5) cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and (6) general chronology and timing of events.  Id.

Plaintiffs argue the following transfers meet the requirements to deny Debtor a discharge pursuant to 11 U.S.C. §727(a)(2) and entitle them to judgment as a matter of law:

> 1) On January 13, 2013, Debtor transferred $5,000.00 to B&A Flowers;
>
> 2) On April 4, 2013, Debtor transferred $133,000.00 to B&A Flowers;
>
> 3) On March 20, 2013, Debtor transferred $5,000.00 to Flower Garden;
>
> 4) On January 31, 2013, Debtor transferred $27,500.00 to Georgia Deer Association;
>
> 5) On February 21, 2013, Debtor also transferred $30,000.00 to Extreme Whitetails, LLC; and
>
> 6) On January 31, 2013, Debtor made two transfers to Mohr one in the amount $9,000.00 and another in the amount of $4,870.00.

Debtor contends the transfers to B&A Flowers and Flower Garden were legitimate loans which have been paid back.  Duggan supports Debtor's explanation for these expenditures.  Debtor states the transfers to Georgia Deer Association and Mohr were loan

17

repayments for money he borrowed to pay attorneys fees.   He says the transfer to Extreme Whitetails, LLC paid for the artificial insemination of one of his deer used in connection with his hunting operations.   He denies he intended to defraud his creditors.

While these transfers raise serious concerns, the Court on a summary judgment motion takes Debtor's explanations and evidence as true and views them in the light most favorable to Debtor.   See In re Oliver, 2012 WL 2930050, at *2 (Bankr. N.D. Ga. June 11, 2012)(denying summary judgment the court must take as true debtor's explanation that transfers were loan repayments).   Generally, resolution of objections to discharge under 11 U.S.C. §727 are not appropriate at the summary judgment stage. Id.; In re Moss, 2006 WL 6589913, at *3 (Bankr. N.D. Ga. March 31, 2006)("summary judgment not appropriate in a §727 action where there is an issue of actual intent"); In re Owens, 2006 WL 6589904, at *4 (Bankr. N.D. Ga. Feb. 3, 2006) (citing In re Lenard, 140 B.R. 550, 555 (D. Colo. 1992)(summary judgment is "particularly problematic" under section 727 since the issues "often require inquiry into the debtor's state of mind or justification for his actions, necessitating explanatory testimony by the debtor and an assessment of his demeanor and credibility").   The Court needs to consider the testimony and assess the demeanor and credibility of the witnesses; therefore, at this

18

point summary judgment pursuant to 11 U.S.C. §727(a)(2) is inappropriate.

**11 U.S.C. §727(a)(3)**.

Pursuant to 11 U.S.C. §727(a)(3), a debtor may be denied a discharge if Plaintiffs prove that "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. §727(a)(3). "An objectionable act under this subsection may be excused if the defendant shows that 'such act or failure was justified under all of the circumstances of the case.'" In re Breedlove, 545 B.R. 359, 373 (Bankr. M.D. Ga. 2016) citing 11 U.S.C. §727(a)(3). The Court has wide discretion in determining whether the records are sufficient for a particular debtor. Id. Courts have applied the following factors in determining the adequacy of records: "(1) the debtor's education; (2) the debtor's sophistication; (3) the debtor's business experience; and (4) the sophistication of the debtor's business." Id. at 374.

Plaintiffs argue Debtor has failed to keep sufficient records from which his financial condition may be ascertained. Plaintiffs assert at least three instances of inadequate

19

recordkeeping.   First, Debtor as the managing member and 50% owner of BMB failed to keep adequate records properly characterizing payments from BMB as salary, loan repayments, or reimbursements for day laborer.   Second, there are no written leases with tenants making it impossible for creditors to assess rental income.   Third, there purportedly are no employment contracts or loan documents regarding Debtor's involvement with B&A Flowers or documenting B&A Flowers payment of his salary and/or personal expenses.   Plaintiffs argue Debtor's failure to maintain adequate records is an effort to thwart his creditors from examining the true state of his financial affairs.

In response, Debtor contends his accountant has records showing his salary, loan repayments, and equitable distributions from BMB, as well as the loan repayments from B&A Flowers.   Debtor also contends he has produced his personal bank account records and a 2013 tax return that shows his financial transactions. Furthermore, he contends his MORs denote salary and deposits for rental income.   He also states that having no written leases and allowing month to month leases affords the landlord needed flexibility and serves a legitimate business purpose.

Again, the Plaintiffs' allegations raise serious concerns, but at this stage in the proceedings, the Court must deny summary

20

judgment as this requires a fact intensive inquiry. See In re Lammers, 2005 WL 1498336, at *3 (Bankr. M.D. Fla. 2005)("Objections to discharge pursuant to 11 U.S.C. §727(a)(3) are not usually decided on summary judgment. Generally, they 'require a fact intensive inquiry regarding the adequacy of the defendant's records'")(citing In re Liu, 288 B.R. 155, 161 (Bankr. N.D. Ga. 2002)(denying summary judgment under §727(a)(3) as it a fact intensive inquiry). While Plaintiffs are correct that Debtor cannot rely on blanket assertions and must bring forth sufficient credible evidence to overcome the objection, at this point the Court needs to consider the evidence, hear the testimony, observe the witnesses' demeanor, consider the nature of the business arrangements and sophistication of the parties. For these reasons, Plaintiffs' motion for summary judgment pursuant to 11 U.S.C. §727(a)(3) is denied.

**11 U.S.C. §727(a)(4)**.

Plaintiffs also object to Debtor's discharge under 11 U.S.C. §727(a)(4), which provides:

> (a) The court shall grant the debtor a discharge, unless-
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>
> > (A) made a false oath or account.

21

11 U.S.C. §727(a)(4)(A). To establish denial of a discharge under §727(a)(4), Plaintiffs must show that Debtor 1) made a statement under oath; 2) that the statement was false; 3) knew the statement was false; 4) Debtor made statement with fraudulent intent; and 5) the statement was material. In re Rebs, 372 B.R. 521, 525 (Bankr. S.D. Fla. 2007). Debtor's bankruptcy petition and schedules are sufficient to meet the "under oath" requirement. In re Photos, 322 F. App'x 930, 933 (11th Cir. 2009)(finding a debtor's repeated omission in his schedules and Statement of Financial Affairs sufficient to deny a discharge under 11 U.S.C. §727(a)(4)). "Deliberate omissions by the debtor may also result in the denial of a discharge." In re Chalik, 748 F.2d at 618. "To justify denial of discharge under §727(a)(4)(A), the false oath must be fraudulent and material." Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991) (per curiam). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Chalik, 748 F.2d at 618.

Plaintiffs assert the following omissions constitute grounds to deny Debtor a discharge for false oaths. First, Plaintiffs assert Debtor failed to disclose pre-petition transfers

22

to B&A Flowers, Flower Garden, Georgia Deer Association, Extreme Whitetails, LLC and Mohr. Dckt. No. 1. Plaintiffs acknowledge Debtor's Amended Schedule B reflects an "account receivable" owed to Debtor by B&A Flowers. Dckt. No. 26. Debtor subsequently amended Schedule B again to show "B&A Inventory Loan" under maintenance and support obligations, stating the loan has now been repaid. Dckt. No. 471. However, Plaintiffs assert that Debtor has not amended his schedules to show transfers to Mohr, Georgia Deer Association, Flower Garden or to Extreme Whitetails, LLC. Furthermore, Plaintiffs note that Debtor only disclosed the B&A accounts receivable after Plaintiffs' discovery requests for bank records revealed the transfer. Plaintiffs further contend Debtor continues to fail to fully explain his financial transactions.

Plaintiffs state Debtor failed to disclose some business entities and he undervalued other entities on his bankruptcy schedules. Specifically, Debtor's schedules fail to disclose Semper Fi Whitetails, LLC, an entity owned by Debtor to facilitate Debtor's deer breeding business endeavors. Plaintiffs also contend Debtor undervalued his interest in WJ Brooks, Inc. and BMB as these entities owned real property generating rental income and thus they were worth more than the $0.00 value set forth in Debtor's schedules.

23

Debtor's schedules list his ownership interest in three deer located in Alabama and collectively values these deer at $6,250.00. Chapter 7 Case No. 13-10860, Dckt. No. 1. Debtor ran a deer hunting preserve and lodge. On his Statement of Financial Affairs, Debtor lists his income from B&A Flowers and discloses the transfer of his Cadillac to Duggan and also states that he is holding a 2012 Ford owned by Duggan. Id. Debtor also discloses annual rental income of $10,800.00 ($900/month). Id. Debtor amended Schedule B to show B&A Flowers Inventory Loan "Re-paid Post-Petition." Dckt. No. 471. He also lists a $20,000.00 loan repayment from BMB on his Amended Statement of Financial Affairs. Dckt. No. 27. Debtor states he never intended to defraud his creditors. He blames his former bankruptcy attorney for any schedule omissions. In his Amended Schedule B, Debtor lists a professional negligence claim against his initial bankruptcy counsel. Dckt. No. 471.

Parties are generally held to the acts performed by their chosen counsel. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396-97 (1993)("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.."). However, as previously stated, resolution of

24

objections to discharge under 11 U.S.C. §727 are generally not appropriate at the summary judgment stage due to questions of actual intent. See In re Moss, 2006 WL 6589913, at *3 (Bankr. N.D. Ga. March 31, 2006)("summary judgment is not appropriate in a §727 action where there is an issue of actual intent"); In re Owens, 2006 WL 6589904, *4 (Bankr. N.D. Ga. Feb. 3, 2006) (citing In re Lenard, 140 B.R. 550, 555 (D. Colo. 1992)(summary judgment is "particularly problematic" under section 727 since the issues "often require inquiry into the debtor's state of mind or justification for his actions, necessitating explanatory testimony by the debtor and an assessment of his demeanor and credibility"). Factual questions remain after considering Debtor's schedules, evidence, and explanations. The Court needs to consider the evidence, hear testimony regarding the nature of these businesses and the parties, and assess the demeanor and credibility of the witnesses. Therefore at this point, summary judgment pursuant to 11 U.S.C. §727(a)(4) is inappropriate.

**11 U.S.C. §727(a)(5).**

Pursuant to 11 U.S.C. §727(a)(5), a court may deny a debtor a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"   11 U.S.C. §727(a)(5).

25

Plaintiffs bear the "initial burden of showing why, or how, a debtor has failed to explain a loss of assets." In re Green, 268 B.R. 628, 648 (Bankr. M.D. Fla. 2001). Once the Plaintiffs establish an unexplained loss of assets, the burden shifts to Debtor to provide a satisfactory explanation. In re Chalik, 748 F.2d at 619. "The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." In re Chalik, 748 F.2d at 619. Vague explanations that are uncorroborated by documentation are unsatisfactory. Id.

In their brief, Plaintiffs point to the unexplained dissipation of the $259,362.18 wired on February 20, 2013 into Debtor's bank account as part of a settlement with Wells Fargo. Plaintiffs agree that Debtor testified that $138,000.00 was loaned to B&A Flowers, $5,000.00 was loaned to Flower Garden, $27,500.00 paid to Georgia Deer Association as a purported loan repayment, and $13,870.00 went to Mohr as a loan repayment which totals $184,370.00 out of the $259,262.18, leaving unexplained the expenditure of $74,892.18. However, Debtor also testified to a $30,000.00 was paid to Extreme Whitetails LLC for breeding rights. Debtor's bank records also list other checks such as a $16,900.00 payment to Automobiles of Distinction, Inc. as well as payments to "Cash" and other entities.

26

Given the current record, the Court needs to consider the evidence and observe the witnesses' demeanor to make a determination of whether Debtor can satisfactorily explain the loss of his assets. Therefore, summary judgment pursuant to 11 U.S.C. §727(a)(5) is not appropriate at this time.

For the foregoing reasons, Plaintiffs' motion for summary judgment is ORDERED DENIED.  For the reasons set forth herein and in this Court's prior orders addressing Plaintiffs' standing, Debtor's motions for summary judgment are ORDERED DENIED.

SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this __30th__ day of March, 2016.